THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWAIN J. WERNER, Appellant.

Fourth Department, January 14, 1977

*George T. Dunn (Gerald Barth* of counsel), for appellant.

*Edward P. Kearse, District Attorney (John Cirando* of counsel), for respondent.

GOLDMAN, J. Appellant was convicted upon narcotic sale, possession and conspiracy charges arising from a sale to Officer John Brennan, an undercover narcotic investigator. Trial testimony indicated that the drugs were sold to Brennan by one Arthur Risteff in an apartment which Risteff shared with one Marlene Cirbus. Brennan, who had a radio transmitter concealed on his person during the transaction, paid for the drugs with marked bills. Brennan did not see appellant in the apartment during the sale. A few moments after Brennan left the apartment with the drugs, Risteff and appellant were accosted on a common stairway of the apartment building by Officer Tardio, who brought them back upstairs to the apartment where the sale had occurred. Brennan shortly returned to the apartment, where appellant was then searched and $450 in marked bills were found on his person. Appellant's motion to suppress the marked bills was denied. At trial, Risteff was called by the prosecution. He testified that he obtained the drugs which he sold to Officer Brennan from appellant, that appellant was hiding in a nearby closet during the sale, in case of a "rip-off" and that after Brennan left, appellant emerged from the closet and received $450 of the proceeds of the sale from Risteff, as per a prior agreement. Marlene Cirbus was also called by the prosecution. She testified, *inter alia,* that she heard appellant discussing the sale with Risteff and that appellant hid in the closet while the sale was taking place.

Appellant first contends that the search of his person was without probable cause and not incident to a lawful arrest, so that the denial of the motion to suppress the marked bills was error. Respondent counters that the affidavit in support of the motion did not raise the issue of the legality of the arrest, so that appellant is precluded from raising that claim on appeal. We disagree. Although the affidavit is inartfully drafted, by a fair reading it does place in controversy the legality of the arrest. We therefore conclude that the question whether the search was incident to a lawful arrest is properly before us.

However, meaningful review on this point is rendered impossible by County Court's failure to dispose of the motion in accordance with the procedures prescribed in CPL 710.60. Subdivision 3 of that section provides, in part, as follows: "The court may summarily deny the motion if: (a) The motion papers do not allege a ground constituting legal basis for the motion; or (b) The sworn allegations of fact do not as a matter of law support the ground alleged". Here the papers do allege one of the statutory grounds for suppression (see CPL 710.20, subd 1), and the affidavit raises questions sufficient to avoid summary denial (cf. *People v Williams,* 46 AD2d 727). If the court does not summarily grant the suppression motion pursuant to subdivision 2 or summarily deny it pursuant to subdivision 3, then "it must conduct a hearing" (710.60, subd 4). It appears, however, that County Court followed none of the alternative courses prescribed by the statute. No hearing was held, but from a reading of County Court's memorandum decision on the suppression motion, it is plain that facts dehors the affidavits were considered. We are informed by respondent's brief that the court "made its own inquiry * * * and, having amassed considerable factual information from the Grand Jury minutes and preliminary hearing minutes, found no basis for suppression". The fault with this practice is that the facts were taken from records in proceedings where the suppression issues were not the focus of the inquiry (see CPL 180.60, 180.70, 190.65). Moreover, at least in the case of a Grand Jury proceeding, the accused's right to adduce evidence is so limited (see CPL 190.50) that he is in no position to subject critical facts to thorough adversarial scrutiny. In *People v Del Giorno* (19 AD2d 849), this court disapproved the practice of "informally" resolving fact issues and deciding suppression motions by resort to the Grand Jury minutes. Nor is the failure to hold a proper suppression hearing rendered harmless by the fact that here, unlike *Del Giorno,* we have the benefit of a trial record. It cannot be assumed that all facts pertinent to the suppression motion were fully developed at the trial, since by the time of trial the suppression motion had already been denied. More importantly, because the issue of the legality of the seizure was not submitted to the jury, it cannot be inferred from the verdict that all factual disputes and questions of witness credibility were resolved in favor of the legality of the seizure. On this record there are a number of disputed questions of fact which, though not necessarily resolved by the jury, could have assumed critical importance

on a suppression hearing. Among them are the following: whether appellant voluntarily accompanied Officer Tardio upstairs to the apartment or whether he was forced at gun point; whether Officer Brennan's radio transmitter was functioning, so that Tardio could have learned thereby that the apartment where the sale took place was on the third floor; whether Risteff and appellant were walking or running down the stairs when Tardio stopped them; whether the door to the apartment was open or closed when Tardio stopped them on the stairs. In short, appellant has never yet had a full opportunity to explore facts pertinent to the legality of the search and seizure of his person. Accordingly, we conclude that the matter should be remitted for a proper hearing and determination of the suppression motion.

The record also reveals an error in a charge to the jury under the accomplice testimony corroboration statute (CPL 60.22), which requires reversal of the conviction. Over the exception of the defense, County Court charged the jury as a matter of law that Marlene Cirbus was not an accomplice, so that "her testimony does not need any corroboration". In so charging, the court relied on *People v Beaudet* (32 NY2d 371). There the Court of Appeals, interpreting section 399 of the Code of Criminal Procedure, which was the predecessor of the present accomplice testimony statute, restated the "judicially elaborated" test, which was "whether an alleged accomplice was so connected with the crime that he could have been convicted as a principal or as an accessory before the fact" (p 374). However, with the enactment of CPL 60.22 (subd 2), [eff Sept. 1, 1971], the foregoing common-law test was supplanted by the following statutory definition: "An 'accomplice' means a witness in a criminal action who, according to evidence adduced in such action, may reasonbly be considered to have participated in: (a) The offense charged; or (b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged". The statute broadens the common-law definition of an accomplice " 'in order to provide a more equitable, operable and consistent standard for the courts in determining when the requirement of corroboration is applicable' " *(People v Basch,* 36 NY2d 154, 157, quoting Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 60.22, p 195; accord, *People v McAuliffe,* 36 NY2d 820, 822 and *People v Brooks,* 34 NY2d 475, 477) and to implement more logically " 'the purpose of the "accomplice"

doctrine: namely, preclusion of conviction solely upon the testimony of persons who are *in some way* criminally implicated in, and possibly subject to, prosecution for the general conduct or factual transaction on trial' " *(People v Fielding,* 39 NY2d 607, 610, quoting Denzer, op cit, pp 194-195 [emphasis in original]).

In *People v Basch (supra,* p 157) the standard for deciding requests for jury charges on accomplice testimony was stated as follows: "If the undisputed evidence establishes that a witness is an accomplice, the jury must be so instructed but, if different inferences may reasonably be drawn from the proof regarding complicity, according to the statutory definition, the question should be left to the jury for its determination [citations omitted]". Applying this standard, we conclude that it was error to instruct the jury as a matter of law that Marlene Cirbus was not an accomplice. By her own testimony she found drugs in Risteff's dresser on the night before the sale, and he showed them to her and told her what they were. The next day she heard Risteff and the defendant discussing the impending sale. She admitted knowing that Risteff was keeping the drugs in their apartment for which she paid the rent, that he was going to sell the drugs, and that such a sale was a crime. Although she stated that she had told Risteff to get rid of the drugs, the jury was not bound to accept her testimony on that score, and the fact that she was arrested for possession of marijuana that was not part of the drugs sold is not inconsistent with the conclusion that she was an accomplice to the possession and sale of the latter drugs. From the fact that she was unemployed and living with Risteff, it is reasonable to infer that she stood to benefit economically from the sale. While it may be improbable that the jury would infer that she had the requisite intent for liability as a principal in the possession and sale (Penal Law, § 20.00; but see, *People v Holden,* 127 App Div 758), a more likely inference is that she committed criminal facilitation by permitting the use of her premises for the sale (see Penal Law, § 115.00). The question of Ms. Cirbus' accomplice status should therefore have been submitted to the jury. We cannot conclude that the error in failing to do so was harmless, because of the impossibility of knowing what evidence formed the basis of the jury's determination *(People v Potwora,* 51 AD2d 678, citing *People v Diaz,* 19 NY2d 547, 550; accord, *People v Wyler,* 37 AD2d 375, 377 and *People v Bell,* 32 AD2d 781, 782).

Appellant's final contention, which we reject, is that there was insufficient evidence as a matter of law to corroborate the testimony of Risteff and Ms. Cirbus. Assuming that the jury would find that Ms. Cirbus was an accomplice and that a proper suppression hearing would result in the conclusion that the marked money found in appellant's possession was admissible, there was sufficient corroboration "tending to connect the defendant with the commission of [the] offense" (CPL 60.22, subd 1). Such corroborative proof need not exclude to a moral certainty every hypothesis but guilt, and is sufficient if it connects the defendant with the crime "in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth" *(People v Daniels,* 37 NY2d 624, 630). Here, in addition to the finding of the marked bills on appellant a very short time after the sale, we have Officer Tardio's testimony, which indicated that he saw appellant shortly after the sale, in obvious haste, and apparently coming from the apartment where the sale took place.

The judgment should be reversed and the cause remitted for a proper suppression hearing and a new trial.

MARSH, P. J., MOULE, CARDAMONE and DILLON, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted.